IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JERRY B. P.,[1]
    Plaintiff,

        v.                          Civil No. 3:21-cv-632-JAG

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying Plaintiff's application for a period of disability and disability insurance benefits under the Social Security Act (the "Act"). Plaintiff was fifty-two-years-old at the time of his benefits application and last worked as an automotive technician. (R. at 167, 185.) Plaintiff alleges he is unable to work due to generalized anxiety disorder, major depressive disorder, rheumatoid arthritis, sleep apnea, and astigmatism. (R. at 184.)

On January 13, 2021, an Administrative Law Judge ("ALJ") found Plaintiff not disabled under the Act. (R. at 7.) After exhausting his administrative remedies, Plaintiff seeks review of the ALJ's decision. (*See* Pl.'s Mot. Summ. J. at 1 (ECF No. 14); Pl.'s Mem. Supp. Summ. J. at 1 (ECF No. 15) ("Pl.'s Mem.").) Defendant moves to remand the matter pursuant to 42 U.S.C. § 405(g). (Def.'s Mot. Remand at 1 (ECF No. 17) ("Def.'s Mot.").) Subsequently, Plaintiff filed a motion opposing remand, arguing that this Court should exercise its discretion to reverse the final decision

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

1

of the Commissioner and to direct an award of benefits. (Pl.'s Mem. Opp. Def.'s Mot. Remand at 1, 5 (ECF No. 18) ("Pl.'s Opp.").) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).[2]

Having reviewed the parties' submissions and the record in this case, and for the reasons set forth below, the Court RECOMMENDS that: (1) Plaintiff's Motion for Summary Judgment (ECF No. 14) be GRANTED IN PART to the extent it requests remand and DENIED IN PART to the extent it requests an immediate award of benefits; (2) Defendant's Motion to Remand (ECF No. 17) be GRANTED; (3) the final decision of the Commissioner be REVERSED; and (4) the case be REMANDED for further proceedings.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on March 6, 2020. (R. at 167-70.) The SSA initially denied these claims on June 2, 2020, and again upon reconsideration on August 6, 2020. (R. at 97, 104.) At Plaintiff's written request, the ALJ held a hearing on December 1, 2020, where Plaintiff appeared with counsel and testified along with a vocational expert. (R. at 35-62, 111-112.) On January 13, 2021, the ALJ issued a written opinion, denying Plaintiff's claim for benefits from December 1, 2017, through the date of the decision. (R. at 10-20.) On July 28, 2021, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-5.) Plaintiff filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g).

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess

3

the claimant's residual functional capacity, accounting for the most the claimant can do despite his physical and mental limitations. § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform his past work given his residual functional capacity. § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform his past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 10-20.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity[3] since December 1, 2017 (the alleged disability onset date). (R. at 12.) At step two, the ALJ found that Plaintiff had the following severe impairments: (1) scapholunate advanced collapse of the left wrist; (2) status-post right distal biceps repair; and (3) obesity. (R. at 12.) The ALJ concluded at step three that Plaintiff did not have an impairment or

---

[3] Substantial gainful activity is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations. (R. at 14.) Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity.[4] The ALJ found that Plaintiff could perform light work, as defined in 20 CFR 404.1567(b), with the exception that he can "frequently handle, push and pull, and operate hand controls with the left upper extremity; frequently reach overhead bilaterally; frequently balance; and occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds." (R. at 14.)

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (R. at 18.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 19.) In making her findings, the ALJ considered the testimony of a vocational expert, who opined that given Plaintiff's age, education, work experience, and residual functional capacity, he would be able to perform the requirements of various occupations available in the national economy. (R. at 19, 56-58.) Specifically, the ALJ found that Plaintiff could perform the requirements of representative light, unskilled occupations such as price marker, collator operator, and a mail sorter. (R. at 19.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (R. at 20.)

---

[4] Residual functional capacity is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the residual functional capacity, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

IV. ANALYSIS

Plaintiff challenges the ALJ's finding of "not disabled" and argues that the ALJ erred by improperly evaluating the medical opinions of Robert Rawles, M.D. ("Dr. Rawles"), Jared Gilman, M.D. ("Dr. Gilman"), and Christy Johnson-Oliver, F.N.P.-C. ("Nurse Johnson-Oliver") (Pl.'s Mem. at 1, 9-14.) In response, Defendant contends that this action should be remanded to the Commissioner for further proceedings, including a *de novo* hearing and a new decision that properly accounts for the medical opinion evidence. (Def.'s Reply Mem. at 2 (ECF No. 19) ("Def.'s Reply").) In opposing remand, Plaintiff argues that this Court should reverse for an award of benefits because the evidence clearly establishes that Plaintiff is limited to sedentary work, and that this evidence, in addition to Plaintiff's age, should result in a directed finding of disabled pursuant to the GRID rules. (Pl.'s Opp. at 3-5); (Pl.'s Mem. at 14-15.)

The parties agree that the ALJ's decision should not be upheld. The question presented is whether this action should be remanded to the Commissioner for further proceedings or reversed for an award of benefits. For the reasons set forth below, the Court finds that the ALJ erred in her evaluation of the medical opinions of Dr. Rawles and Dr. Gilman.[5] However, the undersigned declines to award benefits and RECOMMENDS that this matter be REMANDED for further proceedings.

---

[5] Plaintiff generally asserts that the ALJ erred in finding Nurse Johnson-Oliver's opinion not persuasive. (Pl.'s Mem. 9, 14.) However, Plaintiff has not set forth sufficient analysis to support his contention that the ALJ committed error in evaluating the opinion of Nurse Johnson-Oliver. (Pl.'s Mem. 5-14; Pl.'s Opp. 3-5.) Because this alleged error has not been fully developed by Plaintiff and since remand is otherwise appropriate, the Court will not specifically address this issue.

6

**A. The ALJ Erred in Her Evaluation of the Opinion of Dr. Rawles.**

On June 7, 2019, Dr. Rawles, Plaintiff's treating physician, submitted a medical opinion assessing Plaintiff's ability to perform work-related activities. (R. at 1008.) Specifically, Dr. Rawles opined that "[Plaintiff] would benefit from [a] working environment that did not require a rigorous use of the bilateral extremities with limited lifting with up to 20 pounds very infrequently and likely less than 5-10 pounds continuously." (R. at 1008.)

On May 11, 2016, Dr. Rawles noted that Plaintiff wore a wrist brace for support while performing light duty work. (R. at 504.) Then, on July 9, 2020, Dr. Rawles documented that Plaintiff's discomfort was being managed "reasonably well" by wearing his wrist splint "intermittently." (R. at 899.)

As part of her review, the ALJ considered the medical opinion of Dr. Rawles, finding it "generally persuasive, though some terms are unclear." (R. at 17.) The parties are in agreement that the ALJ erred in her assessment of this medical opinion. (Pl.'s Mem. at 9, 13; Def.'s Reply at 9-10.) First, Dr. Rawles opined that Plaintiff could lift twenty pounds "very infrequently," which the ALJ incorrectly interpreted as "infrequently." (R. at 18, 1008.) The ALJ subsequently interpreted "infrequently" to mean "occasionally." (R. at 18.) The ALJ used this mischaracterization of Plaintiff's limitations in formulating her residual functional capacity determination. (R. at 14-18.) In his report, Dr. Rawles clearly stated that Plaintiff could lift "up to twenty pounds very infrequently." (R. at 1008.) Thus, the ALJ erred by understanding "very infrequently" to mean the same as "infrequently," "infrequently" to mean "occasionally," and then proceeding to use that interpretation to support her determination that Plaintiff could perform light work. (R. at 14-18.) This frustrates the undersigned's ability to review Plaintiff's lifting limitations.

7

Second, the ALJ erred by failing to articulate her analysis of Plaintiff's use of a wrist splint. The ALJ relied on the statement of Dr. Rawles that Plaintiff's discomfort was being managed "reasonably well" by wearing his wrist splint "intermittently." (R. at 17, citing R. at 899.) This reliance was improper because the ALJ failed to consider that this statement referred to Plaintiff's use of a splint in a non-work setting. (R. at 899.) Other evidence in the record suggested that Plaintiff needed to use a wrist brace for work-related activities. (R. at 46 (Plaintiff testifying that his physicians recommended that he use a wrist brace "in order . . . to be at work"); R. at 504 (Plaintiff's physician advising him to continue to use the wrist brace "on a permanent restriction" and to protect his wrist from reinjury "with protective bracing at work").) Accordingly, the ALJ erred in her analysis of Plaintiff's use of a wrist splint.

### B. The ALJ Erred in Her Evaluation of the Opinion Dr. Gilman.

On August 25, 2018, Dr. Gilman, a consultative examiner, evaluated Plaintiff's ability to perform work-related activities. (R. at 580-83.) As part of his assessment, Dr. Gilman conducted a physical examination of Plaintiff and documented his findings in a report. (R. at 580-83.) Dr. Gilman found that Plaintiff had normal movement and grip strength in the wrists and hands, but mild weakness in his wrist extension and shoulders. (R. at 582.) He estimated that Plaintiff could carry and lift ten pounds occasionally and ten pounds frequently. (R. at 583.) He based this finding on Plaintiff's statements that he could "only lift 10 lbs max." (R. at 580.) Dr. Gilman reported Plaintiff's wrist and shoulder tendinopathy as "stable." (R. at 583.)

As part of her review, the ALJ considered Dr. Gilman's medical opinion, finding it "not persuasive" in her residual functional capacity analysis. (R. at 18.) However, the parties agree the ALJ failed to explain how Dr. Gilman's medical opinion was supported by the other medical evidence, as required by the regulations. (Pl.'s Mem. at 1; Def.'s Mem. at 8.) When articulating a

finding, the ALJ must "explain how she considered the supportability and consistency factors for [each] medical source's medical opinions." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability is determined by considering the objective medical evidence and the accompanying explanations. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). An ALJ's failure to consider both supportability and consistency factors is grounds for remand. *See e.g.*, *Latisha A. v. Kijakazi*, 2021 WL 5239510, at *7 (E.D.V.A. Oct. 25, 2021); *Ryan G. S. v. Kijakazi*, 2021 WL 8444785, at *8 (E.D.V.A. Aug. 9, 2021); *Marquita F. v. Kijakazi*, 2021 WL 3645101, at *7 (E.D.V.A. July 30, 2021).

In this case, the ALJ noted that Dr. Gilman's findings were inconsistent with both Plaintiff's "other statements in the record" and the medical opinion of Dr. Rawles. (R. at 18.) Further, the ALJ explained that Dr. Gilman's opinion was not supported by his own examination findings, which noted "mild" weakness," the ability to hold a pen, and stable upper extremity impairments. (R. at 18, 580-583.) Moreover, the ALJ discounted Dr. Gilman's opinion, which relied on Plaintiff's statement that he could not lift more than ten pounds, on the basis that Plaintiff testified that he could lift twenty pounds. (R. at 18, citing R. at 48.) Accordingly, the ALJ determined Dr. Gilman's opinion was not persuasive because it relied on Plaintiff's contradictory statements. (R. at 18.) However, it is unclear, based on a review of the hearing transcript, whether Plaintiff did, indeed, testify that he could "lift twenty pounds carefully." Specifically, when asked whether he could lift a twenty-pound case of soda and carry it around, Plaintiff's response was documented as "[INAUDIBLE.]" (R. at 48.) Absent the ALJ's clarification for the record, this Court is unable to meaningfully review the veracity of the ALJ's citation, which was material to her findings. Thus, as both Plaintiff and Defendant assert, the ALJ's characterization of Plaintiff's testimony was "admittedly problematic" (Def.'s Reply at 8) because the citation to Plaintiff's

9

testimony does not support the ALJ's finding that Plaintiff made "such [a] statement at the hearing." (Pl.'s Opp. at 13.) Consequently, the ALJ committed reversible error when evaluating Dr. Gilman's medical opinion evidence.

### C. The Court Recommends Remand for Further Proceedings.

When the decision of the Commissioner is appealed, this Court has the statutory authority to reverse the administrative decision or remand the case for further proceedings. 42 U.S.C. § 405(g); *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987); *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir.1971). However, "[a] judicial award of benefits is appropriate only in rare instances when the record unequivocally supports a finding that [a claimant] is disabled and therefore entitled to an award of benefits." *Holmes v. Astrue*, No. 3:08-1829-CMC-JRM, 2010 U.S. Dist. LEXIS 82266, 2010 WL 3220085 at *4 (D.S.C. Aug. 12, 2010).

Plaintiff contends that reversing and directing an award of benefits is appropriate because the ALJ improperly evaluated and/or misinterpreted the medical statements of Dr. Rawles, Dr. Gilman, and Nurse Johnson-Oliver. (Pl.'s Opp. at 4.) Plaintiff briefly suggests that remand for a benefits calculation is appropriate because the record "clearly establishes" that he is limited to sedentary work. (Pl.'s Opp. at 3, 5.) Plaintiff, however, acknowledges that some of the ALJ's errors require remand for further proceedings. In particular, Plaintiff states that the ALJ's failure to clarify "unclear" terms in the opinion of Dr. Rawles is an "error requiring remand." (Pl.'s Mem. at 12.) Furthermore, Plaintiff cites case law supporting the notion that remand for further proceedings is appropriate in this case. (Pl.'s Mem. at 12.) Defendant responds that remand, and not a directed award of benefits, is proper because "diverging evidence" exists to support the ALJ's determination. (Def.'s Reply at 12.)

"A court may . . . reverse and direct the award of benefits only in the unusual case in which it can be determined, even in the absence of an explanation, that there is no account on which substantial evidence could support a denial of benefits." *Carr v. Kijakazi*, No. 20-2226, 2022 WL 301540, at *4 (4th Cir. Feb. 1, 2022). "[W]here the ALJ's 'insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings' and 'there is at least conflicting evidence in the record,' the appropriate remedy is to remand for further proceedings." *Id*. at *3 (quoting *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013)). In *Carr*, the Fourth Circuit noted three instances in which the ALJ failed to provide an explanation for the residual functional capacity, which made it "impossible" to evaluate whether the evidence was substantial and supported the ALJ's findings. *Id.* at *2-3. Furthermore, the Court deemed the medical record "ambiguous" since it contained opinions from two experts with different conclusions. *Id*. at *3.

The present matter is analogous to *Carr* because the ALJ's errors, as discussed above, render it impossible to determine whether the evidence was substantial and supported the ALJ's findings. Indeed, the medical opinions, prior administrative findings, and vocational expert testimony relied on by the ALJ present conflicting evidence in the record. In her written decision, the ALJ considered the opinions of the state agency medical examiners when crafting Plaintiff's residual functional capacity and found the opinion of Dr. Daniel Camden to be "more consistent" with the record and "more persuasive" than the opinion of Dr. Joseph Duckwall. (R. at 17.) The state agency medical examiners both opined that Plaintiff's limitations would not prevent him from working and that he could perform light work. (R. at 72-73, 91-92.)

This is not the "unusual case" where there is no evidence that could be considered substantial and used to support a denial of benefits. *Carr*, 2022 WL 301540, at *4. The ALJ

considered the vocational expert's testimony, which presented evidence that conflicted with other medical opinions. (R. at 19.) Moreover, the medical opinions of Dr. Rawles, Dr. Gilman, and Nurse Johnson-Oliver all provide conflicting limitations. Specifically, Nurse Johnson-Oliver opined that Plaintiff could sit, stand, and walk less than two hours per workday and lift as much as fifty pounds "occasionally." (R. at 863.) Dr. Rawles offered no limitations related to sitting or standing and stated that Plaintiff could lift no more than twenty pounds "very infrequently." (R. at 1008.) Dr. Gilman limited Plaintiff to lifting and carrying ten pounds and opined that Plaintiff could sit for six hours per day. (R. at 583.)

The duty to resolve evidentiary conflicts rests with the ALJ, not the reviewing court. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). This Court finds that "there is at least conflicting evidence in the record" bearing on the ALJ's residual functional capacity assessment. *Carr*, 2022 WL 301540, at *3. As a result, the undersigned recommends that this action be remanded for further proceedings.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that: (1) Plaintiff's Motion for Summary Judgment (ECF No. 14) be GRANTED IN PART to the extent it requests remand and DENIED IN PART to the extent it requests an immediate award of benefits; (2) Defendant's Motion for Remand (ECF No. 17) be GRANTED; (3) the final decision of the Commissioner be REVERSED; and (4) the case be REMANDED for further proceedings.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record and forward a copy to Senior United States District Judge John A. Gibney, Jr.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: August 26, 2022